■ KARIN DEMIS, Respondent, v D. JOSEPH DEMIS, Appellant. —Casey, J. Appeal from that part of an order of the Supreme Court (Prior, Jr., J.), entered August 1, 1988 in Albany County, which partially denied defendant's motion for a protective order.

The parties were married April 13, 1968 and have four children born during the marriage. In August 1970, the parties executed an agreement containing several provisions, one of which recognized the future possible contingency of the breakup of the parties' marriage and provided, *inter alia,* for support and property distribution in that event. Plaintiff commenced this action in December 1987 seeking a divorce based on cruel and inhuman treatment and also seeking to set aside the postnuptial agreement. In response to plaintiff's interrogatories and demand for a statement of net worth, defendant moved for a protective order, arguing that such disclosure was premature until the postnuptial agreement, executed prior to the effective date of Domestic Relations Law § 236 (B), was set aside. Supreme Court struck the interrogatories without prejudice to later reconsideration, but directed compliance with the demand for a net worth statement. The court also directed defendant to make full disclosure of his financial condition at the time the postnuptial agreement was executed. Defendant appeals only from so much of the order as requires him to disclose his current financial status.

We agree with defendant that so long as the support and property distribution provisions of the postnuptial agreement, which predates the equitable distribution law, remain in effect, defendant's current financial condition is not an issue and, therefore, is not subject to disclosure *(see, Kaufman v Kaufman,* 125 AD2d 293; *Weinstock v Weinstock,* 122 AD2d 790). The appropriate procedure is to proceed with the merits of plaintiff's claim that the agreement is invalid before ordering disclosure of the parties' current financial status *(see, Hoffman v Hoffman,* 100 AD2d 704). Since the merits of this

claim have not been addressed by either party,* the record is patently incomplete regarding the facts and circumstances of the execution of the postnuptial agreement, precluding any determination of its validity on this appeal. In the absence of any proof in the record that a separation was contemplated by the parties and was the raison d'etre for the property disposition and support provisions of the agreement, there is no basis for characterizing those provisions as a separation agreement (see, Matter of Wilson, 50 NY2d 59, 66).

Order modified, on the law, with costs to defendant, by deleting so much thereof as directed an exchange of the parties' statements of net worth, and, as so modified, affirmed.

Mahoney, P. J., Casey and Weiss, JJ., concur.

Kane and Yesawich, Jr., JJ., dissent and vote to affirm in a memorandum by Yesawich, Jr., J. Yesawich, Jr., J. (dissenting). We would affirm Supreme Court's order in its entirety.

In 1970, after being married more than two years, the parties executed an agreement, the third numbered paragraph of which provided, among other things, that upon deterioration of marital relations to the extent that they could not "live together as man and wife" defendant would pay plaintiff a lump sum of $10,000 plus $150 per month for two years as plaintiff's maintenance and $200 per month for each child born after January 25, 1969 as child support, that the marital residence would be defendant's sole property, and that all of the household furnishings and personal property other than defendant's personal effects would be plaintiff's sole property. Following execution of that agreement, the parties, who had one child born January 24, 1969, produced three more children, twin sons born in August 1971 and a daughter born in November 1973.

Whether disclosure of defendant's current net worth is premature, as defendant contends, and cannot be compelled until the 1970 postnuptial agreement is first set aside (see, Oberstein v Oberstein, 93 AD2d 374) depends upon how that agreement is characterized. Generally, postnuptial agreements may be grouped into two categories: "(1) those intended as a property arrangement between parties that intend to remain married, basically serving the same purposes as an ante-nuptial agreement; and (2) those intended to define the property rights of spouses that are separating. These latter contracts

---

* In their moving papers, both parties requested that the cause of action directed at the validity of the agreement be severed from the divorce claim, with an immediate trial of the issues raised by that cause of action.

are commonly called 'separation agreements' " (1 Lindey, Separation Agreement and Antenuptial Contracts § 3.01; *see,* 2 Foster, Freed and Brandes, Law and the Family New York §§ 8:24, 8:25, 12:1 [2d ed]). The agreement at hand is a hybrid: the first and second numbered paragraphs, not here in issue, deal with the parties' retention of their separate property and, *inter alia,* the waiver of each party's right to elect against the other's. will, and therefore may be considered property arrangement agreements; the third numbered paragraph, however, is conditioned, not on continuation of the marriage, but rather on its complete deterioration and in that event makes allowances for maintenance and child support and thus must be deemed to be separation agreement provisions.

Since the equitable distribution statute applies only to agreements entered into on or after the July 19, 1980 effective date of that statute (Domestic Relations Law § 236 [B] [3]; *see,* 2 Foster, Freed and Brandes, Law and the Family New York § 12:1, at 856-857 [2d ed]), preequitable distribution case law controls the subject agreement. When that case law is brought to bear, it is apparent that the separation provisions of the 1970 agreement have been abrogated. This is a necessary consequence of the parties' subsequent reconciliation and cohabitation *(see, e.g., Zimtbaum v Zimtbaum,* 246 App Div 778, 779, *affd* 272 NY 416; *see generally,* 2 Foster, Freed and Brandes, Law and the Family New York § 12:47 [2d ed]) and the passage of time, for there is no indication the parties separated after entering into the agreement *(see generally,* 2 Foster, Freed and Brandes, Law and the Family New York § 12:13 [2d ed]). In view of their 17 additional years of marriage during which they produced three more children and the parties' statements acknowledging that there had indeed been a reconciliation, there can be no serious question that there, in fact, had been a resumption of the marital relationship after the agreement was executed *(cf., Markowitz v Markowitz,* 52 AD2d 521). The child support and maintenance components of the postnuptial agreement having been vitiated, the equitable distribution statute controls with respect to those issues and thus Supreme Court properly ordered disclosure of defendant's current financial status *(see,* Domestic Relations Law § 236 [B] [4] [a]). Be that as it may, a plenary hearing must still be had as to the validity of the property settlement aspect of the postnuptial agreement, for that survives *(see generally,* 2 Foster, Freed and Brandes, Law and the Family New York § 12:48 [2d ed]). This result also conforms with the concluding substantive paragraph of the agreement itself

wherein the parties expressly stipulated that the agreement's provisions were separable and "that any provision * * * declared to be illegal, invalid and void shall in no way effect the other provisions [of the agreement]".