**DODGE STREET, LLC, Plaintiff–Counter–Defendant–Appellee,**

v.

**Charles R. LIVECCHI and C.R.L. Management, Inc., Defendant–Counter–Claimant–Appellant.**

**No. 01–7373.**

United States Court of Appeals, Second Circuit.

April 5, 2002.

David L. Rasmussen, Harris, Beach, LLP, Rochester, NY, for Plaintiff–Counter–Defendant–Appellee.

Stephen M. O'Neil, Damon & Morey, LLP, Buffalo, NY, for Defendant–Counter–Claimant–Appellant.

Present STRAUB, KATZMANN, Circuit Judges, and SESSIONS, District Judge.*

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Defendants–Appellants Charles R. Livecchi and C.R.L. Management, Inc. appeal from a judgment entered February 27, 2001, in the United States District Court for the Western District of New York (Michael A. Telesca, *Judge*) granting summary judgment in favor of Plaintiff Appellee Dodge Street, LLC and dismissing all of the defendants' claims. For the reasons stated below, we affirm the judgment of the District Court.

* The Honorable William K. Sessions III, of the United States District Court for the District of Vermont, sitting by designation.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from an acrimonious eviction proceeding that occurred in late 1998. On November 12, 1998, Dodge Street, LLC ("Dodge Street") purchased the Cambridge Court Apartments, a large residential apartment complex in Rochester, New York, at a public non-judicial foreclosure auction pursuant to the Multi Family Mortgage Foreclosure Act, 12 U.S.C. §§ 3701–17. Charles R. Livecchi ("Livecchi"), the former owner of the property, and C.R.L. Management ("CRL"), a corporation owned solely by Livecchi, conducted a property management business out of an apartment unit in the property.

On December 16, 1998, a closing was held and title to the property passed to Dodge Street. The next day, on December 17, 1998, Dodge Street served a "Notice to Vacate the Premises" on Livecchi and CRL. The notice informed Livecchi that Dodge Street was now the owner of the property and terminated CRL's contract to manage the building. Upon presenting the notice, Dodge Street demanded that Livecchi turn over all business records concerning Cambridge Court and immediately vacate the premises. Livecchi refused to immediately vacate, and on December 18, 1998, Dodge Street moved by Order to Show Cause before the United States District Court for the Western District of New York seeking a declaration of the parties' rights and liabilities, ejectment of Livecchi and CRL from the property, damages for trespass, and an order directing CRL to turn over certain books and records concerning the management of the premises, keys, and residents' security deposits. The District Court granted a temporary restraining order against CRL enjoining and restraining it from entering the premises and executed the Order to Show Cause requiring CRL to appear on December 23, 1998 to demonstrate why, *inter alia*, a permanent injunction should not be entered. On the same day, Dodge Street changed the locks so that Livecchi could not reenter his former office.

On December 23, 1998, the parties appeared before the District Court. Livecchi, appearing *pro se* on behalf of himself and CRL, argued that CRL was a tenant at sufferance that had a valid lease (which expired in May 1999) for one of the apartment units in the property. Dodge Street contended that it was entitled to immediate possession of the property pursuant to 12 U.S.C. § 3713(c) but conceded that CRL was a tenant at sufferance. The District Court found that "[t]here is no question [that Dodge Street is] entitled to possession of the property," since Livecchi had not proffered any proof of a leasehold interest. In addition, the District Court attempted to negotiate a settlement between the parties. After an investor of Dodge Street confirmed on the record that he was willing to pay $10,000 in exchange for Livecchi immediately vacating the premises, the following exchange took place:

> The Court: Mr. Livecchi, I am going to have to make some arbitrary decisions here. You may not like it. You may not like it. You move out today. You give him ten thousand dollars today.
>
> [Dodge Street Investor]: Yes.
>
> The Court: You give him ten thousand today. You move out today. Find another place. You're not operating your business now. There is bad blood here. Its no good for either one of you. If you're in business, you don't want to be in an environment that is going to affect your business. You can see how upset your wife is. For God sakes, get out. Get out today. He gives

you ten thousand dollars today and you make the transfers of whatever and don't come back here again. Gentlemen, you're accomplished real estate investors and entrepreneurs. You don't belong here in Federal Court two days before Christmas. Work out a deal. Don't come back here. Work out a deal like gentlemen and like businessmen. A deal is a deal.

Mr. Livecchi: That's true, your Honor.

The Court: Okay.

Mr. Livecchi: A deal is a deal.

The Court: I don't see anything else to decide on this matter. Submit an order. Give him ten grand today. You move out today.

In an order entered the same day as the conference, the District Court enjoined and restrained CRL and Livecchi from entering the premises. The terms of the proposed settlement were also incorporated in the order.[1] Later the same day, under the direction of federal marshals, Livecchi was permitted an opportunity to return to Cambridge Court to remove his business records. Livecchi contends, however, that he was not afforded adequate time to remove his property and that Dodge Street confiscated his records, furniture and other property. Despite being dissatisfied with his opportunity to regain his property, Livecchi did not petition the court to enforce the court's order. More-over, he accepted the promised $10,000 from Dodge Street.

Livecchi and CRL appealed the District Court's injunction to this court in January 1999. We denied relief, holding that by the time the appeal was heard CRL no longer had a right to enter or occupy its former office in Cambridge Court, thereby rendering the issue of injunctive relief moot. On February 3, 1999, Livecchi and CRL answered Dodge Street's complaint and counterclaimed seeking monetary damages for wrongful eviction and destruction of personal property. The defendants claimed that due to Dodge Street's actions they were unable to collect over $4 million in rent from other properties managed by CRL. The defendants also raised several tort claims, accusing Dodge Street of intentional infliction of emotional distress, intentional interference with contract, and conversion.

In November and December of 2000, each party moved for summary judgment on all claims. On February 27, 2001, the District Court dismissed all of the defendants' counterclaims, holding that Livecchi and CRL had relinquished any right to raise a claim of wrongful eviction by agreeing to the court-brokered settlement agreement on December 23, 1998. As to the merits of the defendants' claims, the District Court held that CRL did not have a valid lease, and thus had no property interest in the Cambridge Court apartment. Therefore, Dodge Street could not

---

1. The order, in pertinent part, stated that:

[O]n or before 5:00 p.m. on December 23, 1998 the plaintiff shall deliver to defendants all books and records situated at the office location of 74A Dodge Street which are not books and records of the Cambridge Court Apartments, to CRL Management, Inc., and it is further

ORDERED, that plaintiff shall permit defendants access to remove all of defendants [sic] furniture and office equipment on or before 5:00 p.m. on December 23, 1998 and defendants shall remove all such equipment and office furniture by that time and date, and it is further

ORDERED that upon delivery of all office records, security deposits, and by removal of the furnishings and equipment by 5:00 p.m. on December 23, 1998 as contemplated by this Order, plaintiff shall pay to the defendant the sum of $10,000.00 in good funds.

have wrongfully evicted CRL. Finally, the court held that the defendants' tort claims were either waived by the settlement agreement or were otherwise meritless.

## DISCUSSION

■ On appeal, Livecchi's primary contention is that by the terms of 12 U.S.C. § 3713(c) the District Court should have treated CRL as a tenant at sufferance and thus afforded it rights under federal and New York state law, including the right to retain the premises for thirty days after receiving a notice to vacate. We decline to reach this question, however, because like the District Court, we find that the parties reached a valid settlement agreement on December 23, 1998. We reach this conclusion, however, by different means than did the District Court. The District Court held that the parties had agreed to the terms of the settlement on the record during the December 23 hearing. However, after reviewing the transcript of that hearing, we find something less than total assent on the part of Livecchi. Livecchi, not a lawyer, was essentially informed that he would have to accept a number of "arbitrary decisions" made by the court. The court then dictated the terms of the settlement, never explicitly asking for Livecchi's agreement. Livecchi stated on the record that "a deal is a deal," but this statement fails to provide a clear indication of assent to the deal.

■ Despite that Livecchi failed to explicitly agree to the settlement during the conference itself, his subsequent actions, most notably his accepting $10,000 from Dodge Street, manifest the requisite assent necessary to constitute a binding settlement agreement. Under New York law, even if a party subjectively does not intend to be legally bound, if his actions, gauged by an objective standard, support the conclusion that he accepted the agree-

ment, he will be legally bound to honor the contract. *See Pollitz v. Wabash R. Co.,* 207 N.Y. 113, 129, 100 N.E. 721 (1912) (plaintiff estopped from denying existence of contract "when the conduct of a plaintiff, relating to the transaction or matter complained of by him, subsequent to the rise of it, justifies and supports the normal and reasonable conclusion that he, by his assent thereto or acquiescence therein, has accepted and adopted it."). Perhaps the strongest indicia that a party has assented to a contract is when that party accepts the benefits of the agreement without reservation. *See Palumbo v. Norstar Bank Upstate N.Y.,* 212 A.D.2d 377, 622 N.Y.S.2d 263 (N.Y.App.Div.1995) (holding that plaintiffs ratified a settlement agreement where the agreement was fully performed and the plaintiffs accepted its benefits); *McLean v. Balkoski,* 125 A.D.2d 234, 509 N.Y.S.2d 34 (N.Y.App.Div.1986) (holding that party ratified separation agreement by accepting payments pursuant to it).

Here, it is undisputed that Livecchi accepted $10,000 from Dodge Street. He took this money the same day as the hearing in which the court detailed the terms of the proposed agreement. And although he might not have assented to the agreement at the hearing, by accepting the benefits of the bargain later that day and reserving no right to continue to pursue legal action, he ratified the proposed agreement. Livecchi now claims that he thought this money was simply meant to reimburse him for cost of vacating the building. This claim is dubious on its face and wholly inconsistent with an objective interpretation of his actions in light of the circumstances. In short, no reasonable juror would conclude that by accepting a $10,000 check (without reservation) immediately after the District Court's hearing, Livecchi's actions failed to objectively

**612**

manifest an intent to be bound by the proposed settlement.

Though escorted by federal marshals when moving his property out of Cambridge Court, Livecchi alleges that Dodge Street confiscated and destroyed property belonging to CRL, including valuable business records, office furniture and other property. The District Court dismissed this claim, finding that the settlement agreement accepted by Livecchi extinguished any right to complain that Dodge Street had not complied with the court's order to allow him to remove his property. We agree. The terms of the settlement agreement, as codified in the District Court's order, were that the $10,000 payment would be made only after Livecchi had been granted access to the apartment complex and received all of his records. By accepting the $10,000 settlement without reservation, he ratified the agreement and confirmed that its terms had been complied with. If Livecchi believed that Dodge Street had not given him adequate access or failed to turn over the appropriate documents, he should have either rejected the payment or explicitly reserved the right to pursue legal action and promptly moved to enforce the order. He chose neither of these courses of action, accepting the payment without reservation and later counterclaiming for conversion. And by so doing, so he is now estopped from alleging that the terms of the settlement had not been complied with. *See Pollitz*, 207 N.Y. at 129, 100 N.E. 721.

We have examined Livecchi's two remaining tort claims, and for substantially the reasons set forth in the District Court's Decision and Order, we affirm the dismissal of those claims.